Next case on the calendar is United States v. Roney. We'll hear from the appellant. May I please report? My name is Jay Osteotich and I represent the appellant Patrick Roney. I'm here today to ask that you vacate the district court's order denying Mr. Roney's request for compassionate release and remand the case with instructions directing the district court to grant the motion and re-sentence him to time of service. Mr. Roney is a 62 The BOP indicates that he is scheduled to be released on October 24, 2021, less than a year from today. He has served just over 90% of his sentence. The court is aware, and the reason why this argument is taking place over the telephone, there is currently a global pandemic due to the novel coronavirus. According to the Centers for Disease Control and Prevention, there have been over 8.5 million cases in the United States, and over 225,000 people in the United States have died as a result of the virus. The Federal Bureau of Prisons has not been immune to the effects of the virus. More than 17,000 inmates have tested positive, and there are currently more than 2,000 inmates who have active cases. 101 inmates at the Federal Medical Center in Rochester where Mr. Roney is currently incarcerated have tested positive. Currently, as of today, there are 13 active cases. Of 129 inmates under BOP control have died as a result of the virus. Out of 122 BOP facilities and 23 rural reentry centers, 7 BOP medical centers accounted for 10% of the positive tests for COVID-19 and 22% of all inmate deaths. Mr. Osijovic, I'm sorry to interrupt. This is Judge Lynch. Looking at, it's just because of something you just said, you mentioned that 101 inmates at Rochester have tested positive. I checked the website this morning myself, so I can confirm what I guess is the source of your knowledge of that. But at the time that Judge Scretany made his decision back in June, the facts looked quite different. Suppose I agreed with the government that at the time that Judge Scretany made his decision, there was little basis for specific concern about Mr. Roney at Rochester. But it appears from reliable sources that things have changed. But that change information is not in the record. And then I noted something else you said, that yes, there are 101 people who tested positive, but there are 16 active cases, which tells me that just what I know from the website, there's a good reason why I shouldn't rely simply on one stray bit of information from a website, because there may be other information that leads to a slightly less dramatic conclusion. I'm not suggesting what the significance of that is. Maybe 101 positive tests, even if people are asymptomatic, is a really serious problem. But what I'm getting at is, in short, if I were to think that Judge Scretany was within his What do we do with that in a fast-developing situation? Well, I think part of the problem with relying on just numbers as they were at the time when Judge Scretany issued his decision is that it was not looking at the number of asymptomatic inmates. What we have learned is that when facilities undertook mass testing, there have been significant increases in the number of inmates who actually are suffering from the coronavirus and are asymptomatic. We can look at Terminal Island United States Penitentiary as one example, where once they undertook mass testing, all of a sudden, 500 new cases emerged. The Centers for Disease Control did a study earlier in the year. Well, thank you, Mr. FCO. I understand what you're saying, but you're reciting things that, again, are not in the record. And there's a reason why we rely on that. I'm not suggesting that your information is unreliable, but things that are drawn from newspapers and scientific studies reported at second-hand, or even if you read them first-hand, I certainly haven't. My question is, can we remand this to the district court? Again, assuming that we think that based on the record that we're actually reviewing, the judge made a perfectly reasonable decision in June. Is the next thing to happen, if we think that, that we just affirm and leave it to you to bring a new motion? Or should we spare everyone the trouble of that and just send it back and ask the judge to reconsider based on whatever new information you might present? That would be one way to address it, Your Honor. I think part of the problem with the judge's finding, however, is also whether or not just the risk alone of him contracting the virus in that closed environment where an inmate is unable to fully protect himself. There's no social distancing in a prison, for example. Well, but that would suggest that every sentence prisoner and every detainee who is in a vulnerable category ought to be released. Now, that may be an argument that you want to make, but it's one that we and other courts have regularly rejected. I think once you start looking at individual inmates and you look at the type of risk that they have, as well as other factors, including the amount of time that he has served, when you start getting to the 3553 aid factors, I think those would lead to the question of releasing the prisoner. Now, you can send this back to the district court and allow it to look at these new conditions. Let me just ask. This is Judge Livingston. If we send this back to the district court, wouldn't that mean that any time that we have the same procedural posture, that we're always going to be sending it back on remand for the district court? Because there's always going to be some change from the record, given the evolving nature of this virus. So. So your argument must be that these changes are sufficiently serious in some sense that it needs to be remanded. Yes, it does, Your Honor. I think the nature of this virus and the inability of very ill prisoners to care for themselves and to sufficiently protect themselves from the virus in such an environment as a prison would warrant taking these kinds of steps. What about the district court's analysis of the 3553A factors? I mean, the district court evaluated the current situation that was in the record before it at the time, made a determination that compassionate release was not was not appropriate, but then said even if I were to find that there were extraordinary circumstances here on consideration of these factors, I would not think release appropriate. You want to address that? Because that would ground a conclusion that we don't need to send it back because the district court has already told us what it would do in the context of this new information. Yes, Your Honor. I think when the district court looked at the 3553A factors, it was looking at the factors based on the original sentence, not as to whether or not reducing the sentence to time served would still meet the requirements of 3553A. And I think that would be an error of law. When you look at the factors and take them into consideration, we're talking about only, at the time, a 16-month reduction in the sentence, and those factors still would have been met as it had in the original sentence. It still would have taken into account the severity of the sentence. He would have been able to serve 88 percent of his sentence. Now, if you send it back now, it would be over, I think it's 92 percent of the sentence. So this takes into account the severity of the sentence. It takes into account the questions of deterrence, both specific and general deterrence, because it's still a very severe sentence that he had served. And it would have taken care of his health and medical needs, and those needs would still be taken care of once he's on supervised release. So I think these factors would be still sufficient if you were to send it back. And I think the court erred in reaching its conclusion because the court's decision was that, looking at the sentence that he imposed at the time, the 168 months, was a fair, just, and reasonable sentence without looking at the question as to what compassionate release is about, where we're supposed to show sympathy and concern for the inmates. And that is the basis for the reduction. Thank you. You've reserved some rebuttal time. We'll hear from the government. Thank you, Your Honor. Thank you, Your Honors. Good morning. May it please the court. Can everyone hear me? Yes. Thank you. My name is Tiffany Lee, and I represent the United States. This court is solely about whether or not the district court abused its discretion when it denied Mr. Rooney's motion for a compassionate release. And when you're looking at the record here, and in terms of what the district court reviewed, the district court went through every step and said, in the first instance, it did not find that Mr. Rooney had met his burden in terms of showing extraordinary and compelling reasons. But even if he had, the district court, in evaluating the Section 35538 factors, made the determination that those factors would militate towards not releasing or not reducing Mr. Rooney's sentence. I wanted to turn to Judge Lynch's question about how do you handle, I guess, the changing nature of facts. For purposes of petitioner's motion when it comes to Section 3582C, Compassionate Release. And the reality is that that statutory provision, which is very limited, given that the Censusing Reform Act's purpose was to ensure finality of sentences, basically states, does not have a limitation, I guess, in terms of how many motions an inmate would make. So this provision is very different from, for example, the habeas petitions that we're used to. So to the extent a petitioner faces new facts and feels the need to apply again, first to the Bureau of Prisons, and then if he or she has exhausted the administrative remedies portion of 3582C, can proceed to the court and file a new motion. How long, Ms. Lee, does it usually take to exhaust remedies before the Bureau of Prisons? I assume the Bureau of Prisons has a lot of these applications. It does, and the reality is the First Step Act provided a 30-day limit when it amended that section of Compassionate Release. So it's within either the exhaustion of administrative remedies or 30 days from when BOP is made aware of the inmate's motion. Okay, so in other words, what Mr. Roney could do is file a new application with the Bureau of Prisons and then 31 days later could come back to judge scrutiny. Exactly. If the defendant believes that there are changed circumstances. Exactly, and there have been times when, obviously, in the courts below, as we're looking at whether or not administrative remedies have been exhausted, they might further litigate that in terms of saying, wait a minute, you know, my situation is so dire that you need to look beyond the 30-day requirement. But that's still an open issue in terms of interpretation. But at the very least, the statute talks, speaks of 30 days or the exhaustion of administrative remedies, whichever happens sooner. Okay, I understand. Thank you very much, Ms. Lee, for that. No problem. But ultimately, as Judge Livingston noted in her question, the reality is here, Judge Spratney basically said you couldn't meet that. Mr. Roney, even were I to accept that, there are extraordinary and compelling circumstances here. That doesn't complete the analysis in terms of under the district court's discretion what it can do. So it doesn't mean that that's an automatic trigger for the district court to decide whether to release or reduce. Basically, the statute does talk about consideration of Section 355CA factors. And here the district court said this is a person who admitted to possessing images of child pornography, images that involve sadistic and masochistic conduct of children under the age of 12. And moreover, this is an individual who himself had a history of actual contact with children. So evaluating these factors, the district court determined that a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence, or protect the public from future crimes of the defendant. Well, of course, Ms. Lee, if he went back again with a new application, he would also be by that point about six months closer to finishing that sentence anyway. So that circumstance might change as well. All of that would be a new thing for the district court to consider. Yes, and the government would agree with that. I would agree with that statement. I assume you disagree with Mr. Osiowicz's suggestion that Judge Scrutiny looked at the 3553 factors only by putting himself back, whatever it is, more than a decade in time and considering it as of the time of the original sentence. Can you reflect on that in terms of the record? I think in terms of the record, I cannot say that it did not just look back. But I guess the question is, I guess I don't understand how Mr. Osiowicz is envisioning how district courts would consider the sentence. Because the reality is, the original sentence is imposed, there's a presumption of finality, and all the basis that all those factors that went forth at the day of sentencing, they're supposed to be, I guess, immutable. Because of the fact that the statute, compassionate release, starts by saying a district court may not modify a sentence, except if it finds compassionate release. And if it finds extraordinary and compelling reasons, and that it's been an evaluation of section 3553A factors. I think the way the statute is looking at it is whether or not taking the whole package, including what happened at the original sentencing, it makes sense to reduce or release a particular defendant. So otherwise, I guess what Mr. Osiowicz is positing is that district courts look at it and say, okay, well, then there's 70 months, or excuse me, 24 months remaining in this person's sentence. So on the day of the consideration of the 3553A factors in terms of when a district court is facing a motion for a compassionate release, it just doesn't make sense that they're looking from that day forward. Well, I'm not sure about that. If you're looking at, I mean, this is a somewhat theoretical discussion, I suppose. But if there are extraordinary circumstances that might well warrant a compassionate release, or actually a reduction in sentence, though, given the arguments that are made here, of course, it would be silly to say taking three months off the end of his sentence is something you'd want to do. It's either release or nothing, it seems to me. But if there are such circumstances, the 3553A factors might look very different when you're this far into a sentence and when there may be evidence of rehabilitation. I don't know if there is in Mr. Roney's case. It doesn't seem to me to be that the statute says you can never revisit the need for the original sentence in light of changed developments where there are extraordinary circumstances. And I think that's what I'm trying to get at. I don't think the statute says that you're prohibited from looking at the original sentence, which is what I seem to think Mr. Obstiavich is implying. But you're also not... Yeah, sorry. Go ahead, Jerry. Okay, I was just going to say it sounds to me that what you're saying is the judge is within his discretion in looking back at the original sentence and saying, look, there are real reasons why this was a long sentence, and those reasons persist. Exactly. Exactly. Your Honor, for all those reasons, the government submits that this court should affirm the decision and order of the district court. And unless the court has any further questions, the government would rest on its brief. Thank you, Ms. Lee. We'll hear rebuttal. Thank you, Your Honor. I'll try to keep it brief and short. When looking at what is an extraordinary compelling reason for sentence reduction, what we're finding is different courts within the circuit are actually coming up with different evaluations as to what is extraordinary, whether or not the risk posed to a defendant based on health risks alone is sufficient or whether or not it is insufficient, as the judge found in Mr. Roney's case. And what we're finding is that, really, an inmate now will be released based upon the luck of the draw in the judge who was originally signing the case and who is looking now at the motion. So I think some guidance is needed as to what is extraordinary and compelling, and if the risk posed to an inmate alone is sufficient for that finding. So it's requiring the court to answer that question so that we can – Well, there's a question, Mr. Otciovic, as to what is sufficient or what compels a judge to do something, and I think you might want to be a little careful what you wish for in terms of guidance from the circuit and giving guidelines. You've got situations where prisoners may have been released, uncompassionate release, and the government has chosen not to appeal, and the prisoner benefits from a generous decision by a district court. That's what happens when you increase the discretion allocated to district judges. Now, some may think that's a good thing, some may think it's a bad thing, but I'm not sure that tightening, getting more uniformity on district judges is in the interest of your client or of other people in his situation. I understand, Your Honor. I think what the problem is is the question of what is extraordinary and compelling and whether or not the risks posed to Mr. Roney meet that requirement, and I think what we see is what is happening in the DOP as the number of cases increase, as the number of cases in the facility where Mr. Roney is being incarcerated are increasing and growing. I think that is an extraordinary and compelling reason. But you see, that's exactly why the appellate courts are not a very good vehicle for dealing with this. The situation changes rapidly. We might well think that even today there's a situation such that the mere fact of the pandemic combined with somebody being in a vulnerable category is not enough. But maybe if the cases get even worse in prisons, things would change, and then you'd have a precedent that you'd have to fight a case all the way up to the Court of Appeals again to get it revised in light of changed circumstances. It seems to me that district courts on the ground, close to the prisons, close to the prisoners, are in a much better position than we are to evaluate the circumstances as they exist at the time that an application is being made. I think when we're looking at the circumstances at the time, though, there are things that weren't being taken into consideration by the court, and that's why we have to come to you to have you look at that. Your argument is that the factors weren't weighed adequately and the situation your client was in wasn't fully considered, and that there was a legal error with regard to the consideration of the 3553A factors. Yes, Your Honor.  Thank you very much, and we'll take the matter under advisement. Thank you both. Nicely done. Thank you, Your Honor. Thank you. The next case is Jenkins v. Road Scholar Transportation.